UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Ronny Miguel Urbaez Baez,<br>    Plaintiff<br>V.<br><br>William P. Barr, United States Attorney General; Executive Office for Immigration Review; Jose A. Sanchez, Assistant Chief Immigration Judge for the Boston, Massachusetts Immigration Court; Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; and the United States of America,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT FOR JUDGEMENT AND WRIT
IN THE NATURE OF MANDAMUS

INTRODUCTION

1. Now Comes the Plaintiff, Ronny Miguel Urbaez Baez, by and through the undersigned, and moves this Honorable Court to grant this individual action for declaratory and mandatory relief, authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus and Venue Act, 8 U.S.C. § 1361, and the Administrative Procedure Act, 501 et seq. This action is brought against the Defendants, to compel action proper to the adjudication of the Plaintiff's provisional unlawful presence waiver pursuant to INA § 212(a)(9)(B)(v) and 8 C.F.R. §§ 212.7(e)(3), 212(e)(4).

. On May 17, 2018, the Attorney General issued <u>Matter of Castro-Tum</u>, in which it curtailed the ability of the immigration court and the Board of Immigration Appeals to administratively close removal proceedings, thereby making it impossible for individuals in removal proceedings to apply for the provisional unlawful presence waiver (Form I-601A) with USCIS, because a prerequisite to USCIS's

adjudication of the provisional unlawful presence waiver is the administrative closure of removal proceedings. 8 C.F.R. § 212.7(e)(4)(iii). 27 I&N Dec. 271, 278 n. 3, 282-83 (A.G. 2018),

- 8 C.F.R. § 1003.10(b) authorizes the immigration judge to take any action that necessary and proper to the disposition of a case. Morales v. Barr, 963 F.3d 629 (7th Cir. 2020) (reversing Matter of Castro-Tum); accord Romero v. Barr, 937 F.3d 282 (2019). Until recently, the use of administrative closure was sanctioned for a variety of reasons, including the pursuit of alternative relief. Id.

The Attorney General thereby exceeded his statutory authority by using his referral and review power pursuant to 8 C.F.R. § 1003.1(h) to improperly promulgate, through agency adjudication, a "rule" "of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements" of the Executive Office for Immigration Review without complying with the notice-and-comment or publication requirements of 5 U.S.C. § 553. See 5 U.S.C. § 551(4). The Attorney General may amend the pertinent rules through proper procedures; but he may not under the guise of interpreting a regulation, de facto create a new one. Morales v. Barr, 963 F.3d 629 (7th Cir. 2020).

- The provisional unlawful presence waiver became available on March 4, 2013 and allowed individuals, who could demonstrate extreme hardship a U.S. citizen or spouse, whose sole ground of inadmissibility was unlawful presence, to have their provisional unlawful presence waivers adjudicated in the United States before leaving the United States for their interview at a U.S. consulate. Other individuals who must go through consular processing of their visas must wait until they leave the United States to find out whether they qualify for a waiver of inadmissibility. Clearly, the provisional unlawful presence waiver was meant to be available to those in removal proceedings as well as those who are not in removal proceedings.

- The sole responsibility for adjudicating the provisional unlawful presence waiver rests with USCIS. However, with

the decision in Matter of Castro-Tum, the Attorney General, without a delegation of adjudicatory power, interfered with USCIS's adjudication of the provisional unlawful presence waivers. The Attorney General, in creating a new rule for EOIR, made one by fiat for USCIS. Because of Matter of Castro-Tum, immigration judges are no longer administratively closing cases. And this prevents USCIS from adjudicating provisional unlawful presence waivers for individuals in removal proceedings.

- Matter of Castro-Tum, severely curtailed the longstanding power of the immigration court and the Board of Immigration Appeals to administratively close cases. This case essentially reversed Matter of Avetisyan, 25 I&N Dec. 688 (BIA 2012), which sanctioned and clarified the use of administrative closure. Morales v. Barr, 963 F.3d 629 (7th Cir. 2020).

The Attorney General limited administrative closure to cases in which it was required as part of a settlement agreement or required by a previous regulation. Matter of Castro-Tum, 27 I&N Dec. 271, 282-83 (A.G. 2018).

Furthermore, in this decision, the Attorney General explicitly rejected 8 C.F.R. § 212.7(e)(4)(iii), requiring administrative closure as prerequisite for the adjudication of the provisional unlawful presence waiver for individuals in removal proceedings, as a "previous regulation" exception to the new rule, contradicting the very rule that the decision is meant to promulgate. Matter of Castro-Tum, 27 I&N Dec. at 278, n. 3.  Thus, even if the new rule the Attorney General announced in Castro-Tum was proper, its inapplicability to 8 C.F.R. § 212.7(e)(4)(iii) is arbitrary and capricious – for clearly it is a "previous regulation" that calls for the administrative closure of removal proceedings so that an individual's provisional unlawful presence waiver might be adjudicated by USCIS. The Attorney General's opinion that "previous regulation" applies only to regulations that apply directly to DHS is disingenuous, for it is clear that in terms of the provisional unlawful presence wavier, the functions of the Department of Justice and DHS were coordinate. Matter of Castro-Tum, 27 I&N Dec. 271, 278 n. 3 (A.G. 2018).

Thus, it is reasonable to infer that Castro-Tum was designed to unlawfully prevent individuals in removal

proceedings from being able to benefit from the provisional unlawful presence waiver.

## JURISDICTION

- Jurisdiction is granted to the United States District Court pursuant to 28 U.S.C. § 1331, (Federal Questions); 28 U.S.C. § 2201, (Declaratory Judgment Act); 5 U.S.C. § 701 et seq., (Administrative Procedures Act); 28 U.S.C. § 1361 (relating to actions where the United States is a defendant); 28 U.S.C. § 1367 (supplemental jurisdiction); 28 U.S.C. § 1651 (the All Writs Act); and, 28 U.S.C. § 1361, (Mandamus and Venue Act), to compel an officer of the United States to perform his duty; this section grants federal jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. <u>Morgovsky v. DHS</u>, 517 F.Supp.2d 581, 584(Mass.D. 2007). Traditional mandamus is available to correct a clear usurpation of judicial power. <u>Grinnell Corp. v. Hackett</u>, 519 F.2d 595, 599 (1st Cir. 1975).

## VENUE

- 28 U.S.C. § 1391(e), as amended, provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity, or under color of legal authority, or any agency of the United States, the action may be brought in any judicial district which a defendant in the action resides. The Plaintiff resides in the Commonwealth of Massachusetts, and the Defendants, the Department of Homeland Security, et al., are agencies that operate within this district.

## PLAINTIFF

- The Plaintiff, is a native and citizen of the Dominican Republic; he is not a citizen or national of the United States

- He is present in the United States and is married to a U.S. citizen.

- Mr. Urbaez Baez is the beneficiary of an approved immediate relative petition (Form I-130) and he is currently in immigration court proceedings which have not been administratively closed before the Boston, Massachusetts immigration court (a component of the Executive Office for Immigration Review, or "EOIR").

- Mr. Urbaez Baez has provided biometrics to the U.S. Citizenship and Immigration Service ("USCIS") at a location in the United States designated by USCIS and remains willing to do so if additional requests are made.

- Mr. Urbaez Baez is currently inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).

- If Mr. Urbaez Baez departs the United States to attend an immigrant visa interview, he will only be inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i).

- Mr. Urbaez Baez has a case pending with the Department of State based on an approved immigrant visa petition, for which the Department of State immigrant visa processing fee has been paid.

- Mr. Urbaez Baez will depart the United States to obtain the immigrant visa if he is allowed to apply for a provisional unlawful presence waiver if his application for the waiver is granted.

- Mr. Urbaez Baez can show that his U.S. citizen wife will experience extreme hardship if his application for a provisional unlawful presence waiver is not approved and that he otherwise meets the requirements for a waiver provided in 8 U.S.C. § 1182(a)(9)(B)(v) and 8 C.F.R. § 212.7.

- Mr. Urbaez Baez is above the age of 17 and is not subject to an administratively final order of removal, deportation, or exclusion under any provision of law.

- Neither CBP nor ICE has ever reinstated any prior order of removal under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) because Mr. Urbaez Baez has never received a prior order of removal capable of being reinstated.

- Mr. Urbaez Baez does not have any pending application with USCIS for lawful permanent residence status.

- Mr. Urbaez Baez is currently in removal proceedings and his next individual hearing in immigration court is not set for December 8, 2022. Mr. Urbaez Baez has filed a motion to administratively close his removal proceedings which was denied by an immigration judge on October 29, 2019.

## DEFENDANTS

- The Defendant is William P. Barr, is Attorney General of the United States and is responsible for the enforcement of the Immigration laws of the United States.

- The Defendant is the Executive Office for Immigration Review ("EOIR") and is a component of the Department of Justice and is the executive administrative agency of the United States that is responsible for adjudication of motions to administratively close proceedings that are filed in relationship to immigration removal proceedings. See 6 U.S.C. § 521; 8 U.S.C. § 1103(g)(1); 8 C.F.R. § 1003.0.

- The Defendant is Jose A. Sanchez the Assistant Chief Immigration Judge ("ACIJ") for the Boston, Massachusetts immigration court; ACIJ has been delegated certain authorities by the Director of EOIR to assist the Chief Immigration Judge in the management of the Office of the Chief Immigration Judge in the management of the Office of the Chief Immigration Judge. See 8 C.F.R. § 1003.9(a). ACIJ is sued in his official capacity only.

- The Defendant is Chad F. Wolf and is the current Acting Secretary of the United States Department of Homeland Security and is sued in his official capacity only.

- The Defendant is the United States of America and is ultimately responsible for the adjudication of motions to administratively close proceedings which are filed with the Executive Office for Immigration Review.

## ANALYSIS

- The provisional unlawful presence waiver (Form I-601A) was made available for the first time on March 4, 2013 for immigrant visa applicants who can show that the applicant's extended presence outside of the United States will result in extreme hardship to the U.S. citizen spouse or parent.

<p style="padding-left: 40px;">See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536-01(Jan. 3, 2013).</p>

- The enacting regulation included a Supplementary Information section which provides that the sole reason that immigration judges and the Executive Office for Immigration Review were not given the ability to adjudicate provisional unlawful presence waiver applications was because "DHS determined that it would be more efficient and appropriate to have Form I-601A waivers [i.e., provisional unlawful presence waiver applications] centralized and adjudicated by one agency, USCIS, especially given the intended streamlined nature of the process…" 78 Fed. Reg. 536-01, 537 (Jan. 13, 2013). This language makes it clear that DHS intended for individuals in removal proceedings to be able to apply for provisional unlawful presence waivers, and that the only reason such power was not granted to EOIR was because the Secretary presumed that EOIR would continue to allow administrative closure of removal proceedings if an individual in removal proceedings intended to apply for a provisional unlawful presence waiver.

- The regulation which created the provisional unlawful presence waiver also explicitly detailed that "DHS initially proposed excluding all [noncitizens] who were in removal proceedings from the provisional unlawful presence waiver, except those whose: (1) [r]emoval proceedings had been terminated or dismissed; (2) Notices to Appear (NTAs) had been cancelled; or (3) removal proceedings had been administratively closed but were subsequently reopened to grant voluntary departure." 78 Fed. Reg. 536-01, 538 (Jan. 13, 2013)(citing 77 Fed. Reg.at 19922). However, rather than adopting this restrictive language, DHS instead "decided to allow [noncitizens]in removal proceedings to participate in this new provisional unlawful presence waiver process in their removal proceedings are administratively closed and have not been re-calendared at the time of filing the Form I-601A." 78 Fed. Reg. 538 (Jan. 13, 2013).

- By providing that individuals are eligible to file for a provisional unlawful presence waiver so long as their removal proceedings are administratively closed, the Secretary of Homeland Security reasonably interpreted 8 U.S.C. § 1182(a)(9)(B)(v)in a manner that allows for persons in removal proceedings to apply for a provisional

7

unlawful presence waiver. Moreover, a person remains eligible for a provisional unlawful presence waiver *even if* their removal proceedings are re-calendared before the application is adjudicated *so long as* the application was received before proceedings were re-calendared, DHS further evidenced a clear intent to allow individuals in removal proceedings to apply for and benefit from provisional unlawful presence waivers. See 8 C.F.R. § 212.7€(4)(iii).

- In August 2016, the provisional unlawful presence waiver (Form I-601A) was expanded to more applicants, allowing any beneficiary who can show hardship to a U.S. citizen or permanent resident spouse or parent.

- The provisional unlawful presence waiver is a process by which individuals who are currently in the United States and who will be applying for an immigrant visa at a U.S. consulate abroad, and whose only inadmissibility issue is unlawful presence under 8 U.S.C. § 1182(a)(9)(B)(i), may apply for the waiver of inadmissibility before they leave the United States. Generally, the provisional unlawful presence waiver process helps people who have been living in the United States with their family without status, who are ineligible to adjust their status to that of a lawful permanent resident, and who raise no other inadmissibility issues. See 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(3),(4); 78 Fed. Reg. 536-38 (Jan. 13, 2013); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244-01, 50244-45 (July 29, 2016).

- Before the provisional waiver process began in 2013, individuals had to leave the United States to attend their Consular interviews and could seek a waiver of inadmissibility after the consular interviews and could only seek a waiver of inadmissibility after the consular officer made a formal finding of unlawful presence inadmissibility. 78 Fed. Reg. 536-01, 536 (Jan.13,2013). These individuals were forced to stay outside the United States for many months, far from family, work, and community ties, while waiting for adjudication of their waiver for unlawful presence. Id. If the waiver were ultimately denied, the immigrant visa applicant would be stuck outside the country with no immediate way to return legally. Id. Lengthy separation and uncertainty in the process meant that, for many families, this pathway to legal status was too risky to undertake. Id. The Department

8

of Homeland Security acknowledged as much, stating, "As a result of often lengthy processing times and uncertainty about whether they qualify for a waiver of the unlawful presence inadmissibility grounds, many immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa." Id.

- When USCIS grants a provisional unlawful presence waiver application, this grant is not an indication of whether any other inadmissibility issues apart from 8 U.S.C. § 1182(a)(9)(B) apply.

- USCIS possesses sole jurisdiction to adjudicate an application for provisional unlawful presence waiver (Form I-601A). 8 C.F.R. § 212.7(e)(1).

- In order for USCIS to have jurisdiction to adjudicate an application for a provisional unlawful presence waiver (Form I-601A) submitted by a person in removal proceedings, it is necessary that the applicant's removal proceedings be administratively closed prior to USCIS' receipt of the application. 8 C.F.R. § 212.7(e)(4)(iii).

- 8 C.F.R. § 212.7(e)(3) delineates who may apply for a provisional waiver and states:

Except as provided in paragraph (e)(4) of this section, a [noncitizen] may be eligible to apply for and receive a provisional unlawful presence waiver for the grounds of inadmissibility under section 212(a)(9)(B)(i)(I) or (II) of the Act if he or she meets the requirements in this paragraph. A [noncitizen] may be eligible to apply for and receive a waiver if he or she:

   i. Is present in the United States at the time of filing the application for a provisional unlawful presence waiver;

  ii. Provides biometrics to USCIS at a location in the United States designated by USCIS;

 iii. Upon departure, would be inadmissible only under section 212(a)(9)(B)(i) of the Act at the time of the immigrant visa interview;

  iv. Has a case pending with the Department of State based on:

    (A) An approved immigrant visa petition, for which the Department of State immigrant visa processing fee has been paid; or

    (B) Selection by the Department of State to participate in the Diversity Visa Program under section 203(c) of the Act for the Fiscal year for which the [noncitizen] Registered.

  v. Will depart from the United States to obtain the immigrant visa; and

  vi. (vi)Meets the requirements for a visa waiver provided in section 212(a)(9)(B)(v) of the Act.

- 8 C.F.R. § 212(e)(4), in turn, delineates who is wholly Ineligible and unable to apply for a provisional presence waiver, stating (emphasis added):

> Notwithstanding paragraph (e)(3) of this section, a [noncitizen] is ineligible for a provisional unlawful presence waiver under paragraph (e) of this section if:
>
>  i. The [noncitizen] is under the age of 17;
>
>  ii. The [noncitizen] does not have a case pending with the Department of State, based on:
>
>   (A) An approved immigrant visa petition. For which the Department of State immigrant visa processing fee has been paid; or
>
>   (B) Selection by the Department of State to participate in the Diversity Visa program under section 203(c) of the Act for the fiscal year for which the [noncitizen] registered;
>
>  iii. ***The [noncitizen] is in removal proceedings,*** in which no final order has been entered, ***unless the removal proceedings are administratively closed and have not been***

> *re-calendared at the time of filing the application for a provisional waiver;*
>
> iv. The [noncitizen] is subject to an administratively final order of removal, deportation, or exclusion under any provision of the law (including an in absentia order under section 240(b)(5) of the Act), unless the [noncitizen]has already filed and USCIS has already granted, before the[noncitizen] applies for a provisional waiver under 212(a)(9)(A)(iii) of the Act and 8 C.F.R. § 212.2(j);
>
> v. CBP or ICE, after service of notice under 8 C.F.R. 241.8, has reinstated a prior order of removal under section 241(a)(5)of the ACT, either before the filing of the provisional unlawful presence waiver application or while the provisional unlawful presence waiver application is pending; or
>
> vi. The [noncitizen] has a pending application with USCIS for lawful permanent residence status.

- "General administrative closure is not specifically authorized by the INA or regulations governing [immigration judges] or the BIA." Romero v. Barr, 937 F.3d 282, 288 (4th Cir. 2019) (citing Vahora v. Holder, 626 F.3d 907, 917-18 (7th Cir. 2010) (noting that the general power to administratively close a case is "not a practice specified in the [INA]" or "mentioned in the current regulations," but is a "procedural device" employed by quasi-judicial bodies for "orderly management of the docket" and is "reviewable by courts.")) (foot note omitted); see also 8 C.F.R. § 1003.9(b)(3) (granting the Office of the Chief Immigration Judge the authority to "direct that the adjudication of certain cases be deferred … and otherwise manage the docket of matters to be decided by the immigration judge.")' 8 C.F.R. § 1003.1(a)(2)(i)(C) (granting the Office of the Chief Immigration the authority to "direct that the adjudication of certain cases be deferred … and otherwise manage the docket of matters to be decided by the immigration judge."); 8 C.F.R. § 1003.1(a)(2)(C)(granting the Chairman of the Board of

11

Immigration Appeals the authority to "direct that the adjudication of certain cases be deferred … and otherwise to manage the docket of matters to be decided by the Board").

- "[A]dministrative closure is explicitly authorized or required by federal regulations addressing specific classes of potential visa recipients and pursuant to various judicially approved settlements." Romero v. Barr, 937 F.3d at 288(footnote included in quotation)(citing Barahona-Gomez v. Ashcroft, 243 F.Supp.2d 1029 (N.D. Cal. 2002)(requiring administrative closure for noncitizens who improperly denied suspension of deportation but failed to appear for rescheduled hearings); Am. Baptist Churches v. Thornburgh, 760 F.Supp. 796 (N.D. Cal. 1991)(requiring administrative closure for class members pending adjudication of claims by an asylum officer).

- "Although general administrative closure is not specifically mentioned in the INA or its regulations, the BIA has referenced two regulations that confer broad powers to [immigration judges] and the BIA to manage their dockets as the authority for administrative closure." Romero v. Barr, 937 F.3d at 288 (citing 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1240.1(a)(providing that immigration judges shall have the authority in any removal proceedings to "[d]etermine removability," "make decisions, including orders of removal," "determine applications," "order withholding of removal," and "take any other action consistent with applicable law and regulations as may be appropriate")).

- The regulation which governs the powers of the BIA states that members "shall exercise their independent judgment and discretion" and that "a panel or Board member to whom a case is assigned may take *any action* consistent with their authorities under the Act and the regulations *as is appropriate and necessary* for the disposition of the case." 8 C.F.R. § 1003.1(d)(1)(ii)(emphasis added); see also Matter of Avetisyan, 25 I&N Dec. 688, 695 (BIA 2012)(noting that administrative closure could facilitate "efficient[] management of the resources" of the immigration courts and the BIA).

- "[T]he BIA has issued numerous decisions authorizing [immigration judges] to administratively close cases for a

variety of reasons related to conservation of court resources, such as when a petitioner is awaiting processing of a visa petition by DHS, [...]or is awaiting the resolution of a direct appeal of a criminal conviction … Indeed, as of October 2018, over 330,000 cases remained administratively closed." Romero v. Barr, 937 F.3d at 289 (citing Matter of Hashmi, 24 I&N Dec. 785, 791 n.4 (BIA 2009) and Matte of Montiel, 26 I&N Dec. 555 (BIA 2015))>

- On May 17, 2018, the Attorney General issued Matter of Castro-Tum, 27 I&N Dec. 271 (A.G. 2018), a precedential agency decision holding that immigration judges and the BIA do not have the general authority to administratively close cases because "[n]"either section 1003.10(b) nor 1003.1(d)(1)(ii) confers" such authority. Id. at 282-92. The Attorney General also specifically held that the BIA could not administratively close cases for noncitizens wishing to seek provisional unlawful presences waivers (Form I-601A). Id. at 277 n.3, 286 n.9. The Attorney General concluded that to the extent any existing regulations delegated the general authority to administratively close cases, he was exercising his "discretion to revoke it because the practice of administrative closure thwarts the efficient and even-handed resolution of immigration proceedings." Id.at 288 n.10

- Immigration Judges are now holding that they lack the general authority to administratively close cases. Plaintiffs now seek judicial review of Defendant's unlawful agency action(s).

FACTUAL BACKGROUND

- The immigration court in Boston, Massachusetts "falls under the jurisdiction of the Offices of the Chief Immigration Judge, which is a component of the Executive Office for Immigration Review under the Department of Justice." https://www.justice.gov/eoir/boston-immigration-court.

- The Boston, Massachusetts immigration court has jurisdiction over individuals placed into removal proceedings who live in Massachusetts, Maine, New Hampshire, Rhode Island, and Vermont. The Boston immigration court also exercises jurisdiction over individuals who live in other parts of the country if the individual in removal proceedings moved away from one of

13

- these five states without requesting or being granted a change of venue.

- According to publicly available data, as of March 2020, there was a backlog of 1,129,890 immigration court case throughout the United States.

- In the Boston immigration court, the average number of days that currently pending immigration cases have been pending is 789 days. https://trac.syr.edu/phptools/immigration/court_backlog/

- In the Boston immigration court, the average number of days it took to complete a removal case was 730 days for Fiscal Year ("FY") 2018, 895 days for FY 2019, and the average is currently at 907 for cases completed during the ongoing FY year 2020.

- Now, however, the unlawful provisional waiver process allows certain immigrant visa applicants to request the waiver before they leave. This means they can wait in the United States the many months (or even years) it takes for a decision on the waiver application; if the provisional unlawful presence waiver application is denied, the applicant may choose to postpone consular processing with the knowledge that they cannot presently overcome the unlawful presence inadmissibility ground if they depart. In the initial enacting regulation, DHS stated that "DHS anticipates that this new provisional waiver process will significantly reduce the time that U.S. citizens are separated from their immediate relatives."

- The Plaintiff tried to administratively close his case, but the Immigration Court citing Matter of Castro-Tum, et al., declined to administratively close his immigration court proceedings. Nevertheless, Castro-Tum, has been reversed in two circuits. Romero v. Barr, 937 F.3d 282 (4th Cir. 2019), Morales v. Barr, 963 F.3d 629 (7th Cir. 2019). The Immigration Judge clearly has the power to administratively close removal proceedings pursuant to 8 C.F.R. § 1003.10(b), which permits "any action" that is "appropriate and necessary for the disposition of … cases. Meza Morales, 963 F.3d at …

- The Plaintiff as a result is unable to file his provisional unlawful presence waiver / has had it denied, etc., etc. This waiver allows individuals who are inadmissible due to

14

- unlawful presence – and require no other waiver – to have their waiver of unlawful presence adjudicated before they are required depart the U.S. The Plaintiff is in removal proceedings and is unable to have his case administratively closed, and because of this is unable to benefit from the provisional waiver of unlawful presence.
- The Department of Homeland Security / USCIS has a duty pursuant to INA § 212(a)(9)(B)(v) and 8 C.F.R. §§ 212.7(e)(3), 212(e)(4) to adjudicate his request for a provisional waiver.

- The Department has a duty pursuant to INA § 212(a)(9)(B)(v) and 8 C.F.R. §§ 212.7(e)(3), 212(e)(4) to adjudicate his request for a provisional waiver. 8 C.F.R. § 212.7(e)(4)(iii) provides an individual in removal proceedings is ineligible for the provisional unlawful presence waiver unless his removal proceedings have been administratively closed. The Matter of Castro-Tum effectively amended this regulation to exclude those in removal proceedings from the benefit of the provisional unlawful presence waiver. This decision held that only a previous regulation or a previously approved settlement may warrant administrative closure and further held that 8 C.F.R. § 212.7(e)(4)(iii) does not expressly authorize administrative closure. This amounted to an amendment of 8 C.F.R. § 212.7(e)(4)(iii) to prevent individuals in removal proceedings from applying for a provisional unlawful presence waive without complying with the rulemaking or adjudication procedures of 5 U.S.C. § 553 or 5 U.S.C § 554. Ostensibly, the A.G. in Castro-Tum created a new rule that defines the function of EOIR. However, it also by stealth managed to improperly create a rule for an independent agency, USCIS.

- The interpretation which currently prevents all individuals in removal proceedings from applying for the provisional unlawful presence waiver is contrary to equal protection

- The Plaintiff has exhausted administrative remedies . . . In this instance there is no appeal of a denied provisional waiver, etc., etc.

- Mandamus should be granted in this case where there has been a usurpation of judicial power and this may be remedied by mandamus. Grinnell Corp. v. Chamber of Commerce, U.S.A, 519 F.2d 595, 599 (1st Cir. 1975). The A.G.'s decision in Matter of Castro-Tum amounts to an

15

improper usurpation of judicial power, because without adhering to the requirements of the APA it eliminates a longstanding power of the Immigration Court and the Board to take any action necessary and appropriate for the disposition of cases. See <u>Romero v. Barr</u>, <u>Morales v. Barr</u>

. Additionally, mandamus should be granted where Plaintiff has demonstrated that (1) his claim is clear and certain, (2) the official's duty is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other remedy is available. <u>Morgovsky v. DHS</u>, 517 F.Supp.2d 581, 584(Mass.D. 2007). Pursuant to INA § 212(a)(9)(B)(v) and 8 C.F.R. §§ 212.7(e)(3), 212(e)(4) the Defendant has the responsibility for properly adjudicating the Plaintiff's provisional waiver.

WHEREFORE, the Plaintiff prays that this Honorable Court will:

(1) Assume Jurisdiction over this action
(2) Enter an order that this cause will be maintained as an individual action
(3) Compel the Defendants and those acting under them to perform their duty to properly and with the proper notification to refer his case to the Immigration Court pursuant to her statutory and regulatory rights
(4) Declare that the A.G.'s decision in <u>Matter of Castro-Tum</u>, amounts to an improper usurpation of judicial power, because without adhering to the requirements of the APA it eliminates a longstanding power of the Immigration Court and the Board to take any action necessary and appropriate for the disposition of cases. See <u>Romero v. Barr</u>, <u>Morales v. Barr</u>
(5) Grant such other and further relief as this Honorable Court deems proper under the circumstances; and
(6) Award Attorney's fees and court costs.

Respectfully submitted,

_____  10/20/2020
Stephen A. Lagana, Esq.
145 Essex Street
Lawrence, MA 01840